United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 2, 2003**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 02-10976
_____

EDWARD LEWIS LAGRONE,

                              Petitioner - Appellant,

versus

DOUGLAS DRETKE, DIRECTOR, TEXAS DEPARTMENT OF
   CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

                              Respondent - Appellee.
_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:99-CV-521
_____

Before JOLLY, HIGGINBOTHAM, and DAVIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:[1]

    Edward Lewis LaGrone was convicted of capital murder and
sentenced to death.  He seeks a Certificate of Appealability
("COA") to appeal the district court's denial of federal habeas
relief for nineteen claims.  We DENY a COA for each of the claims.

                              I

    LaGrone was convicted of capital murder by a Texas jury in May
1993.  The State presented evidence that he impregnated ten-year-
old Shakiesha Lloyd.  In an attempt to prevent Shakiesha and her

_____

    [1]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

mother, Pamela Lloyd, from pursuing sexual assault charges against him, LaGrone went to their residence and shot and killed Shakiesha and two of her elderly great-aunts.

The Texas Court of Criminal Appeals affirmed LaGrone's conviction and sentence on direct appeal, and the Supreme Court denied certiorari. LaGrone v. State, 942 S.W.2d 602 (Tex. Crim. App.) (en banc), cert. denied, 522 U.S. 917 (1997).

LaGrone filed an application for state habeas relief in October 1998. The Texas Court of Criminal Appeals adopted the trial court's findings of fact and conclusions of law, and denied relief. Ex parte LaGrone, No. 40,890-01 (Tex. Crim. App. June 23, 1999) (unpublished).

LaGrone filed his federal habeas petition on December 7, 1999, and an amended petition on March 27, 2002. The district court adopted the magistrate judge's recommendation and denied relief. LaGrone v. Cockrell, 2002 WL 1968246 (N.D. Tex. Aug. 19, 2002). The district court also denied LaGrone's request for a COA.

II

LaGrone now requests a COA from this court for nineteen claims. The State concedes exhaustion of all of the claims except for the claims of ineffective assistance of counsel on appeal and actual innocence. The district court noted, however, that the actual innocence claim was presented in LaGrone's state habeas application. In any event, the district court had jurisdiction to

2

deny relief on the merits of any unexhausted claims. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

"[U]ntil a COA has been issued federal courts of appeals lack jurisdiction to rule on the merits of appeals from habeas petitioners." Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003). To obtain a COA, LaGrone must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Miller-El, 123 S.Ct. at 1039; Slack v. McDaniel, 529 U.S. 473, 483 (2000). To make such a showing, he must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El, 123 S.Ct. at 1039 (quoting Slack, 529 U.S. at 484). Because the district court denied relief on the merits, rather than on procedural grounds, LaGrone "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484.

In determining whether to grant a COA, our examination is limited "to a threshold inquiry into the underlying merit of [LaGrone's] claims." Miller-El, 123 S.Ct. at 1034. "This threshold inquiry does not require full consideration of the

3

factual or legal bases adduced in support of the claims." Id. at 1039. Instead, our determination is based on "an overview of the claims in the habeas petition and a general assessment of their merits." Id. "Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination." Tennard v. Cockrell, 284 F.3d 591, 594 (5th Cir. 2002).

## III

We now turn to consider whether LaGrone has satisfied the standard for issuance of a COA for each of his claims.

## A

### Claim 1: Exclusion of Evidence of Pamela Lloyd's Drug Addiction

LaGrone claims that he was denied due process, a fair trial, due course of law and equal protection, his right to confront witnesses against him, and his right to effective assistance of counsel when the state trial court refused to allow the defense to present evidence of Pamela Lloyd's addiction to and abuse of crack cocaine, and refused to allow the defense an opportunity to prove the effect that Pamela's drug use had on the credibility and reliability of her identification of LaGrone as the perpetrator.

At trial, Pamela Lloyd testified that she heard LaGrone's voice inside her home at the time of the murders. Her identification of his voice was based on her acquaintance with him for six years prior to the offense, her involvement in a six-month

4

relationship with him in 1985, and her numerous telephone conversations with him in the days preceding the murders, after she learned that her daughter, Shakiesha, was pregnant. Pamela's brother, Dempsey Lloyd, and her son, Charles Lloyd, also identified LaGrone as the perpetrator.

LaGrone asserts that Dempsey and Charles Lloyd did not identify him as the perpetrator immediately after the murders, and that they changed their stories to identify him as the sole shooter shortly before trial. He therefore contends that Pamela's identification of him as the shooter was critical to the State's case, and that he should have been allowed to fully impeach her credibility.

In a hearing outside the presence of the jury, Pamela testified that she had not used drugs on May 30, 1991, the date of the murders, and that she stopped using cocaine after she learned of Shakiesha's pregnancy on May 26, 1991. The trial court ruled that former Texas Rule of Criminal Evidence 608(b) prohibited defense counsel from impeaching Pamela with evidence regarding her use of, and addiction to, crack cocaine.

Dr. Schmitt, the defense psychologist, testified outside the presence of the jury that, in his opinion, a person who had used crack cocaine for several years and who had stopped for a period of five days would still be affected psychologically, would be suffering depressive symptoms that would make it difficult to be

5

productive or focused, and would have diminished responsiveness to external stimulation, including voices. The trial court ruled that Dr. Schmitt's testimony was not admissible to impeach Pamela's testimony.

On direct appeal, the Texas Court of Criminal Appeals held that, in order to impeach a witness's perceptual capacity with evidence of drug addiction, a party must demonstrate actual drug-based mental impairment during the witness's observation of the crime. 942 S.W.2d at 613. The court reasoned that, since Pamela was not under the influence of crack cocaine at the time of the murders, impeachment evidence of prior drug use was properly excluded. Id. at 613-14. The court also held that the trial court's evidentiary rulings were reasonable because the evidence was prejudicial and collateral and, therefore, the Confrontation Clause was not violated. Id. at 614.

Because the state court found the evidence to be inadmissible under state rules of evidence, the district court refused to review the state court's interpretation of its own law. See Weeks v. Scott, 55 F.3d 1059, 1063 (5th Cir. 1995) (federal habeas court does not review state court's interpretation of its own law). Instead, the district court held that LaGrone was required to show that the state court's evidentiary rulings violated the Confrontation Clause or that the error so infected the trial with unfairness as to constitute a denial of due process. See Little v.

6

Johnson, 162 F.3d 855, 862 (5th Cir. 1998) (habeas relief not warranted unless wrongfully excluded evidence "has played a crucial, critical, and highly significant role in the trial"). The district court held that Pamela's testimony was not crucial to the State's case, because the totality of her testimony was that she heard LaGrone, a man she had known for a number of years and had dated for a period of time, speak one sentence inside of her house at the time of the murders, and there were two other people (Dempsey and Charles Lloyd) who gave eyewitness identification testimony. The district court reasoned that, because there was no evidence that Pamela's prior drug use would have so inhibited her powers of perception that she could not recognize a familiar voice, the limitation of defense counsel's cross-examination of Pamela, and the exclusion of Dr. Schmitt's testimony regarding the effect of recent drug use on perceptual capacity, did not so limit the defense's ability to adequately confront Pamela that it constituted a federal constitutional violation. The district court concluded that the state court's decision was not an unreasonable application of federal law.

Reasonable jurists would not find the district court's assessment of this claim debatable or wrong. Even assuming that the evidence was excluded erroneously, Pamela's identification of LaGrone did not play a "crucial, critical, and highly significant role in the trial." Little, 162 F.3d at 862. In addition to her

7

identification of LaGrone, the State also presented the testimony of Dempsey and Charles Lloyd, who identified LaGrone as the perpetrator. Furthermore, there was evidence that: LaGrone had a girlfriend buy the murder weapon for him; the same gun was used to kill all three victims; and LaGrone had a motive to kill Shakiesha and the other family members because he was the father of her unborn child and Pamela was pressing charges against him for sexually assaulting Shakiesha. Because LaGrone has not made a substantial showing of the denial of a constitutional right, we deny a COA for this claim.

B

Claim 2: Failure to Disclose Victim Impact Statement

LaGrone claims that he was denied his right to due process and equal protection as a result of the State's failure to produce, and the trial court's failure to order the production of, Pamela's victim impact statement. LaGrone argues that the statement was relevant and admissible to impeach the reliability and credibility of Pamela's identification testimony, because it was further proof of her incapacity to accurately perceive the events on the morning of the murders.

Approximately two weeks after the murders, Pamela completed a "victim impact statement" form. In response to a question asking how the crime had affected her, she wrote: "afraid, cannot sleep, lack of appetite, mind comes & goes." After trial, the State gave

8

defense counsel a copy of the statement. LaGrone moved for a new trial, arguing that the prosecution had violated a pre-trial discovery order and Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose the statement prior to trial. The trial court denied the motion.

On direct appeal, the Texas Court of Criminal Appeals held that the State had no duty to disclose the statement because it was not admissible under the Texas Rules of Criminal Evidence, which prohibit the use of inchoate prior drug use including "nebulous withdrawal symptoms" for impeachment. Furthermore, the Court of Criminal Appeals held that, even assuming the statement was admissible, LaGrone had not met his burden of showing that the statement was material, because the statement's "temporal and logical context" contradicted LaGrone's attempt to connect the statement with Pamela's identification of him. The Court of Criminal Appeals concluded that LaGrone had failed to establish a reasonable probability that the outcome of the trial would have been different if the statement had been disclosed and defense counsel had used it to impeach Pamela's testimony. 942 S.W.2d at 615-16.

The district court held that the state court's decision was not an unreasonable application of Brady. The district court observed that Pamela's statement that her mind "comes and goes" was not material to her identification testimony because the statement

9

was not about her perception of the murders, but instead was in response to a question asking her to state how the crime had affected her. The district court noted that Charles and Dempsey Lloyd had identified LaGrone by sight as the shooter, and also noted the evidence that LaGrone had a girlfriend buy the murder weapon for him, that the same gun killed all three victims, and that he had a motive to kill Shakiesha and the others because he was the father of Shakiesha's unborn child and Pamela was pressing charges against him for sexually assaulting Shakiesha. The district court concluded that, in the light of all of this other evidence linking LaGrone to the crime, the state court did not unreasonably apply federal law when it concluded that the slight impeachment value Pamela's victim impact statement might have had was not material.

The district court's assessment of the materiality of Pamela's statement is neither debatable nor wrong. The statement pertains to the effects of the crime on Pamela and not to her perceptual capacity at the time of the murders. Because LaGrone has not made a substantial showing of a Brady violation, we deny a COA for this claim.

C

Claims 3 and 5: Lack of Parole Instruction

LaGrone claims that the Texas death penalty statute, the Texas Constitution, and the Texas Code of Criminal Procedure, facially

10

and as applied to him, violate due process, equal protection, and the Eighth Amendment prohibition against cruel and unusual punishment because they prohibited the jury from being informed about his parole eligibility, while allowing the State to use future dangerousness as a ground to support the death penalty (claim 3). He also claims that he was denied due process and equal protection because the trial court did not inform the jury of his parole ineligibility for thirty-five years if given a life sentence, and the effect of parole laws on his parole eligibility had he been given a life sentence (claim 5). LaGrone acknowledges that these claims are foreclosed by Fifth Circuit precedent. Nevertheless, he argues that the length of time a defendant will actually serve on a life sentence is highly relevant to a juror's decision on the issue of future dangerousness. His equal protection argument is based on the fact that, in non-capital felony cases, Texas law requires that the jury be instructed on parole and the minimum sentence the defendant must serve before becoming eligible for parole.

The state habeas court held that the trial court's refusal to instruct the jury on LaGrone's parole eligibility did not violate LaGrone's federal constitutional rights.

The district court held that the state court's conclusion is a reasonable application of federal law. The district court observed that LaGrone was convicted of a capital murder that was

11

committed in May 1991, before the law changed, effective September 1, 1991, to increase the parole ineligibility period for a life sentence for capital murder to thirty-five years. Thus, had LaGrone been sentenced to life imprisonment, under the law in effect at the time the murders were committed, he would have been eligible for parole in only fifteen years. The district court relied on Fifth Circuit precedent holding that a parole eligibility instruction is not required in Texas cases, but only in cases where life-without-parole is a sentencing option. See Wheat v. Johnson, 238 F.3d 357, 361 (5th Cir. 2001); Hughes v. Johnson, 191 F.3d 607, 617 (5th Cir. 1999). The district court observed further that, even assuming such an instruction is required, LaGrone's claim would be barred by the non-retroactivity principle of Teague v. Lane, 489 U.S. 288 (1989). See Clark v. Johnson, 227 F.3d 273, 282 (5th Cir. 2000) (Teague bars claim that trial court's failure to instruct jury that petitioner would not be eligible for parole for thirty-five years if sentenced to life imprisonment violated Simmons v. South Carolina, 512 U.S. 154 (1994)).

The district court's assessment of these claims is not debatable or wrong. As LaGrone has acknowledged, his claims are foreclosed by Fifth Circuit precedent. See Tigner v. Cockrell, 264 F.3d 521, 524-26 (5th Cir. 2001) (failure to instruct jury on parole does not violate due process, the Eighth Amendment, or the equal protection clause). Because LaGrone has not made a

12

substantial showing of the denial of a constitutional right, we deny a COA for these claims.

D

## Claim 4: Constitutionality of No Life-Without-Parole Option

LaGrone claims that the Texas death penalty statute, the Texas Constitution, and the Texas Code of Criminal Procedure, facially and as applied to him, violate due process, equal protection, and the Eighth Amendment's prohibition against cruel and unusual punishment because they do not provide for a sentence of life without parole. LaGrone argues that the statutory scheme allows the State to systematically prove that virtually all capital defendants constitute a future danger as a result of the State's failure to provide a sentence of life without parole and because of the State's record of releasing convicted felons after they have served only a very small portion of their sentences.

The district court noted that LaGrone had failed to exhaust this claim in state court, but denied relief on the merits, pursuant to 28 U.S.C. § 2254(b)(2). The district court held that the Texas capital sentencing scheme is not unconstitutional for failing to provide life without parole as a sentencing option.

The district court's assessment of this claim is neither debatable nor wrong. As LaGrone acknowledges, this claim is foreclosed by Andrade v. McCotter, 805 F.2d 1190, 1193 (5th Cir. 1986) (rejecting identical claim). Because LaGrone has not made a

13

substantial showing of the denial of a constitutional right, we deny a COA for this claim.

E

Claim 6: Ineffective Assistance/Parole Instruction

LaGrone claims that he was denied the effective assistance of counsel and due process because his trial counsel failed to request a jury instruction explaining that he was ineligible for parole for thirty-five years and explaining the effect of parole laws on his parole eligibility. He also argues that his appellate counsel rendered ineffective assistance by failing to raise the issue on direct appeal.

The state habeas court concluded that, because parole was not a proper consideration for jury deliberation in a capital murder case, and because the trial court would have rightfully denied the instruction had counsel requested it, trial counsel was not ineffective for failing to make the request.

The district court noted that LaGrone would have been eligible for parole after only fifteen years (not thirty-five, as claimed by LaGrone). It noted further that the jury was informed during the punishment phase that LaGrone had been convicted of murder previously, had received a twenty-year sentence, and had been released on parole before serving his entire sentence. The district court concluded that the state court did not unreasonably apply Strickland v. Washington, 466 U.S. 668 (1984). The district

14

court held that LaGrone had failed to show how trial counsel were ineffective for failing to request that the jury be informed that, if LaGrone received a life sentence, he would again become eligible for parole, after only fifteen years. Furthermore, the district court concluded that LaGrone was not prejudiced by counsel's failure to request the instruction, because the Constitution does not require such an instruction. Although the district court held that LaGrone's claim of ineffective assistance on appeal was not exhausted, it denied relief on the merits of that claim, holding that appellate counsel was not ineffective for failing to raise a nonmeritorious ground on appeal.

The district court's assessment of this claim is neither debatable nor wrong. LaGrone's counsel did not render deficient performance by failing to request an instruction to which LaGrone was not entitled. Furthermore, LaGrone was not prejudiced by counsel's failure to ask the trial court to inform the jury that, if LaGrone were sentenced to life imprisonment, he would be eligible for parole after serving only fifteen years.

F

Claim 7: "Probability"/Reduction of State's Burden

The jury was instructed to answer the following special issue on future dangerousness: "Do you find from the evidence beyond a reasonable doubt that there is a <u>probability</u> that the Defendant would commit criminal acts of violence that would constitute a

15

continuing threat to society?" (Emphasis added.) LaGrone claims that he was denied due process because the use of the term "probability" in this instruction reduced the State's burden of proof on the future dangerousness special issue from "beyond a reasonable doubt" to only a "probability."

On direct appeal, the Texas Court of Criminal Appeals held that the inclusion of the term "probability" in the special issue on future dangerousness did not lessen impermissibly the State's burden of proof beyond a reasonable doubt. 942 S.W.2d at 618.

The district court held that the state court's conclusion is not contrary to clearly established federal law, because LaGrone's jury was clearly instructed regarding the State's burden of proof beyond a reasonable doubt on the special issues. The district court noted that the charge at the punishment phase included the following instructions on the State's burden of proof on the special issues:

> The burden of proof in this phase of the trial still rests upon the State and never shifts to the defendant. The prosecution has the burden of proving that a "Yes" answer is appropriate to each question submitted to you in this phase of the trial beyond a reasonable doubt and if it fails to do so as to any question, you must not answer that question "Yes." The law does not require a defendant to prove that the answer to a question is "No," or produce any evidence at all.
>
> ....
>
> In the event a juror has a reasonable doubt that a "yes" answer is the proper answer to a

16

> question after considering all the evidence, and these instructions, that juror should vote to answer such question "No."
>
> ....
>
> The Court will impose the death penalty if the jury's answers to all of the questions are "Yes"; therefore, in order to warrant the imposition of the death penalty, you must believe, beyond a reasonable doubt, that the evidence supports affirmative answers to all the questions.

Reasonable jurists would not find debatable the district court's assessment of this claim. The jury was clearly instructed that the State had the burden of proof beyond a reasonable doubt on all of the special issues. Accordingly, we deny a COA for this claim.

G

<u>Claim 8: Refusal to Define "Probability"</u>

LaGrone claims that he was denied due process and equal protection because the trial court refused to define the term "probability", as used in the special punishment issue on future dangerousness, and because the term "probability" is vague and indefinite.

On direct appeal, the Texas Court of Criminal Appeals held that the term "probability" is not unconstitutionally vague or indefinite. 942 S.W.2d at 618. The district court held that this conclusion is not contrary to clearly established federal law.

17

The district court's assessment of this claim is not debatable wrong. As LaGrone acknowledges, this claim is foreclosed by our precedent. See Hughes v. Johnson, 191 F.3d 607, 615 (5th Cir. 1999) (failure to define "probability" does not make that term unconstitutionally vague).

H

Claims 9-12: State-sponsored Psychiatric Examination

LaGrone claims that he was denied his Sixth Amendment right to counsel, his Fifth Amendment right to counsel and right not to incriminate himself, and his right to due process and equal protection when he was compelled to submit to a state-sponsored psychiatric examination on the issue of future dangerousness.

Prior to trial, LaGrone filed a motion seeking independent expert witnesses in psychiatry and psychology. In support of the motion, he asserted that his mental and physical condition would be a significant factor at both the guilt and sentencing phases of trial. The trial court granted the motion, allowing LaGrone to be examined by Dr. Schmitt.

In response, the State moved to have LaGrone examined by its own mental health expert for the purpose of rebutting the testimony of LaGrone's expert should he testify on the issue of future dangerousness. The trial court granted the State's motion, ordering that Dr. Coons be allowed to examine LaGrone. The trial court also ordered the State to notify LaGrone's counsel in advance

18

of the time and place of the examination. Although the trial court refused to allow LaGrone's counsel to be present during the examination by Dr. Coons, it provided that LaGrone could recess the interview and consult with his counsel. The court ordered Dr. Coons not to relate anything about the examination to the State, but instead ordered him to deliver his report to the court for <u>in camera</u> inspection. Finally, the court ordered that, if LaGrone presented mental health expert testimony at trial, Dr. Coons would be allowed to observe that testimony and, thereafter, his report would be turned over to the State.

At the punishment phase, LaGrone called Dr. Schmitt as an expert witness. He testified regarding psychological tests he administered to LaGrone, as well as information LaGrone told him regarding his family history and previous drug use. He testified that, in his opinion, LaGrone would not pose a future danger to society.

In rebuttal, the State called Dr. Coons, who testified that he attempted to examine LaGrone pursuant to the court's order, but that LaGrone refused to be interviewed by him. He testified further regarding LaGrone's reasons for refusing to cooperate: Dr. Coons was hired by the prosecution and probably would not be fair, and it was unlikely that Dr. Coons' evaluation would help him. Because of LaGrone's lack of cooperation, Dr. Coons was unable to give an opinion based upon his examination of LaGrone. Instead, in

19

response to hypothetical questions and, based upon the tests administered by Dr. Schmitt and LaGrone's history, he testified that, in his opinion, there is a probability that a person with a criminal background such as LaGrone's would pose a continuing threat to society.

LaGrone argues that he did not waive his Fifth and Sixth Amendment rights, and that the trial court violated those rights, as well as the equal protection clause, by ordering him to submit to the examination by Dr. Coons. He contends that his Fifth and Sixth Amendment rights were also violated by Dr. Coons's refusal to honor his exercise of his Fifth and Sixth Amendment rights; Dr. Coons's commenting to the jury that he had exercised those rights; Dr. Coons's opinion testimony beyond the scope of his expertise and qualifications; and the denial of his right to have his attorney present during Dr. Coons's examination.

In Estelle v. Smith, 451 U.S. 454 (1981), the Supreme Court held that the admission of a psychiatrist's testimony on future dangerousness, which was the result of an interview conducted pursuant to court order, violated Smith's Fifth Amendment privilege against self-incrimination because Smith was not advised before the examination that he had the right to remain silent and that any statement he made could be used against him at sentencing. The Court observed that Smith had not requested the examination and had not offered any psychological evidence; therefore, Smith had no

20

indication that the results of the examination would be used as evidence against him. Id. at 466-68. The Court also held that Smith's Sixth Amendment rights were violated, because his counsel was not notified in advance that the examination would encompass the issue of future dangerousness; therefore, Smith was denied the assistance of counsel in deciding whether to submit to the examination. Id. at 470-71. The Court stated that a different situation would arise where a defendant intends to introduce psychiatric evidence at the penalty phase. Id. at 472.

In Buchanan v. Kentucky, 483 U.S. 402, 422-25 (1987), the Court held that, when the defense requests a psychiatric evaluation or presents psychiatric evidence, and trial counsel was aware of the existence and scope of the examination, the prosecution may "at the very least" rebut the defense's presentation with evidence from the defense-sponsored psychiatric reports.

Our court has held that a defendant's Fifth and Sixth Amendment rights are not violated when he is examined by a state-sponsored psychiatrist and testimony based on the examination is admitted at trial, after the defendant first introduces psychiatric evidence, either on future dangerousness or insanity, the testimony is admitted only for rebuttal, and defense counsel has received advance notice of the scope of the examination. See Williams v. Lynaugh, 809 F.2d 1063, 1067-69 (5th Cir. 1987); Vardas v. Estelle, 715 F.2d 206, 208-11 (5th Cir. 1983).

On direct appeal, the Texas Court of Criminal Appeals held that, when a capital murder defendant indicates an intent to present a mental health expert at the punishment phase of his trial, his Fifth and Sixth Amendment rights are not violated by the trial court allowing a State expert to examine him as well, so long as his counsel is made aware that the results of the examination may be used at the punishment phase, and the State's expert testifies in rebuttal to defense mental health evidence. 942 S.W.2d at 611-12.

The district court held that the state court did not unreasonably apply federal law. The district court concluded that LaGrone's Fifth and Sixth Amendment rights were not violated because LaGrone first introduced psychiatric evidence on the issue of future dangerousness, the State presented Dr. Coons's testimony for rebuttal purposes only, and LaGrone's counsel had advance notice of the scope of Dr. Coons's examination. The district court held that LaGrone had failed to demonstrate that he has any greater rights under the due process or equal protection clauses.

The district court's assessment of this claim is neither debatable nor wrong. LaGrone has not made a substantial showing that his federal constitutional rights were violated by Dr. Coons's attempt to examine him or by Dr. Coons's testimony. See Williams, 809 F.2d at 1067-69; Vardas, 715 F.2d at 208-11. We therefore deny a COA for these claims.

22

Claims 13 and 14:  Voir Dire/Definition of Common Terms

LaGrone claims that he was denied a fair trial and due process when the trial court restricted the questioning of five prospective jurors about their understanding of the term "probability"; and when the trial court sustained the State's objection to the questioning of one prospective juror regarding his understanding of the term "criminal acts of violence."  LaGrone argues that the terms "probability" and "criminal acts of violence" are central to the jury's understanding of, and answer to, the special punishment issue on future dangerousness and, because those terms are not defined by the law, each juror's understanding of those terms is important to the outcome of the trial and to counsel in exercising peremptory challenges.

On direct appeal, the Texas Court of Criminal Appeals held that it was within the trial court's discretion to limit the voir dire examination regarding undefined terms used in the special issues.  942 S.W.2d at 609.

The district court held that the state court's determination is not contrary to clearly established law.  It relied on Fifth Circuit precedent holding that a criminal trial is not constitutionally infirm because the state trial judge would not permit defense counsel to question prospective jurors as to their understanding of terms included in the special punishment issues.

23

See Milton v. Procunier, 744 F.2d 1091, 1095-96 (5th Cir. 1984) (trial court's refusal to allow counsel to inquire into a prospective juror's understanding of the terms "deliberately," "probability" and "criminal acts of violence" did not violate due process or Sixth Amendment rights to trial by jury and counsel).

Because relief for these claims is foreclosed by our precedent, the district court's assessment of these claims is not debatable or wrong. We therefore deny a COA for these claims.

J

## Claim 15: Denial of Challenge for Cause

LaGrone claims that he was denied a fair trial and due process when the trial court denied his challenge for cause to one prospective juror who testified that he did not consider good family background, economic deprivation, and good jail behavior to be mitigating circumstances. LaGrone argues that the right to present mitigating evidence is hollow if the sentencer will not give such evidence effect in the sentencing decision.

During voir dire, defense counsel questioned prospective juror Conner about whether he would consider certain circumstances as evidence that would mitigate against the imposition of the death penalty. Although Conner indicated that he would consider evidence of mental illness, mental retardation, and a history of good deeds as mitigating factors in assessing punishment, he stated that he would not consider evidence of strong family ties or a record of

24

good behavior in jail as mitigating evidence and would most likely not consider evidence of childhood economic deprivation as mitigating unless it was of an unusual nature. Defense counsel challenged Conner for cause, claiming that his inability to consider these circumstances as mitigating evidence constituted a bias against the law. The trial court denied the challenge, and defense counsel later used a peremptory strike to remove Conner from the panel.

On direct appeal, the Texas Court of Criminal Appeals held that it was within the trial court's discretion to deny the challenge for cause, because LaGrone failed to establish that Conner was biased against the law. 942 S.W.2d at 616.

The district court stated that a defendant in a capital case is not entitled to challenge prospective jurors for cause simply because they might view the evidence the defendant offers in mitigation of the death sentence as aggravating instead of mitigating. It therefore concluded that a prospective juror's statement that he does not consider a certain type of evidence as mitigating does not subject him to a challenge for cause because it is not evidence that he will be unable to perform his duties as a juror. The district court held further that, even if the trial court erred in denying the challenge for cause, LaGrone cannot prove that the jury was, in fact, not impartial -- Conner was struck by defense counsel and did not serve on the jury, and

25

LaGrone has identified no other juror who sat on the panel who was not impartial and/or was subject to a challenge for cause. Accordingly, the district court held that the state court's determination is not contrary to federal law.

The district court's assessment of this claim is not debatable or wrong. The trial court should grant a challenge for cause when a prospective juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Adams v. Texas, 448 U.S. 38, 45 (1980); Wainwright v. Witt, 469 U.S. 412, 424 (1985). In a capital case, a trial court must grant a challenge for cause if a prospective juror states that he would automatically impose a death sentence without considering individual aggravating and mitigating circumstances. Morgan v. Illinois, 504 U.S. 719, 729 (1992); see also Buchanan v. Angelone, 522 U.S. 269, 276 (1998) ("the sentencer may not be precluded from considering, and may not refuse to consider, any constitutionally relevant mitigating evidence") (emphasis added). The law does not, however, require a juror to consider any particular circumstance as mitigating. Soria v. Johnson, 207 F.3d 232, 244 (5th Cir. 2000) (Soria was not entitled to challenge prospective jurors for cause who might view his evidence offered in mitigation as aggravating).

LaGrone exercised a peremptory challenge against Conner, "which is fatal to his claim that his right to an impartial jury

was violated." Id. at 245 (citing Ross v. Oklahoma, 487 U.S. 81, 88 (1988)). Although LaGrone states conclusorily that he was required to accept an objectionable juror because he was out of peremptory strikes, he has not identified any juror who was not impartial. Accordingly, LaGrone has not made a substantial showing that his jury was not impartial. We therefore deny a COA for this claim.

K

Claim 16: Clemency Procedures

LaGrone claims that his execution after review under current Texas clemency procedures would violate his rights to substantive and procedural due process, the Eighth Amendment's prohibition against cruel and unusual punishment, and international law. He argues that Texas has arbitrarily and routinely denied persons sentenced to death any meaningful review of their applications for commutation. He argues that the Texas clemency procedures are unconstitutional for the following reasons: Since 1972, the Texas Board of Pardons and Paroles has held only one live clemency hearing; decisions of the Board on commutation of death sentences are made individually by board members, and they vote on cases by facsimile; every post-Furman death sentence commutation granted in Texas was sought by state trial officials, for the purpose of avoiding a re-trial; no commutations of the death penalty have been granted in cases where the commutation was sought by the convicted

27

person; and no commutations have been granted for mercy, doubts about guilt, mental illness or capacity, rehabilitation, or other humanitarian reasons. LaGrone concedes that his due process challenge to the Texas system of commutation for death sentences is foreclosed by our precedent. See Moody v. Rodriquez, 164 F.3d 893, 894 (5th Cir. 1999).

LaGrone also argues that the State's failure to provide any real or meaningful process for commutation violates Article 6, §§ 1 and 4 of the International Covenant on Civil and Political Rights ("ICCPR"), which requires that anyone sentenced to death have the right to seek pardon or commutation.

The State argues that LaGrone's claim based on the ICCPR is not constitutionally cognizable, and that he lacks standing to raise it, because he has not yet filed any request for clemency and there is no indication of when, if ever, such a request might be filed and no way of determining whether, if filed, his request will be denied. The State argues further that, even if LaGrone could complain about the Texas clemency process, he has no inherent constitutional right to clemency, and the Fifth Circuit has held that Texas capital clemency procedures provide the minimal procedural safeguards required by federal law. Faulder v. Texas Board of Pardons & Paroles, 178 F.3d 343, 344-45 (5th Cir. 1999); Moody v. Rodriquez, 164 F.3d 893, 894 (5th Cir. 1999). Regarding

28

international law, the State argues that LaGrone's interpretation of the ICCPR is not binding on this court.

The state habeas court concluded that the Texas clemency process satisfies the minimal procedural safeguards articulated in Justice O'Connor's concurring opinion in <u>Ohio Adult Parole Authority v. Woodard</u>, 523 U.S. 272, 288-90 (1998). The court also concluded that the ratification of the ICCPR did not provide LaGrone with any rights not already provided by the federal Constitution.

The district court held that the state court's conclusions were not an unreasonable application of federal law. The district court concluded that LaGrone had failed to prove a violation of his due process rights because there is no evidence that LaGrone will be denied access to the clemency process when the time comes, nor is there evidence that clemency decisions are made in an arbitrary manner. The district court held further that LaGrone failed to show how the Texas clemency process violates international law, because the Senate has declared Articles 1-27 of the ICCPR not self-executing, meaning that they cannot be in effect as law in the United States without action by Congress incorporating the provisions into domestic law. <u>See</u> <u>Beazley v. Johnson</u>, 242 F.3d 248, 267-68 (5th Cir. 2001).

The district court's assessment of this claim is not debatable or wrong. We therefore deny a COA for LaGrone's clemency claim.

29

Claim 17:  Ineffective Assistance of Counsel/Psychiatric Expert

LaGrone claims that his trial counsel rendered ineffective assistance by presenting the testimony of psychologist Dr. Schmitt during the punishment phase.

Dr. Schmitt testified that, based on his interview and psychological testing, LaGrone has definite ideas of right and wrong; but those ideas differ from those of general society because of the "survival environment" in which LaGrone was raised.  He testified that LaGrone is a bright man with uncultivated talents and abilities who is capable of being treated; that he believed LaGrone would seek to improve himself in prison by continuing his education and developing his artistic talents; and that he believed LaGrone would not be violent.  Although Dr. Schmitt conceded that LaGrone would be dangerous if he were free to walk away from the courtroom that day without any psychological treatment, he emphasized that, if given a life sentence, LaGrone would not be a future threat to society.

On cross-examination, Dr. Schmitt testified that LaGrone retaliates when threatened, humiliated, or mistreated.  He reiterated, however, that he believed that LaGrone would get psychological help and improve himself in prison, and that, without help, LaGrone would be capable of violence.  He testified that when LaGrone is within a system of clearly-defined rules and

expectations and is under close supervision, his propensity for violence is greatly diminished.

LaGrone argues that, although Dr. Schmitt's testimony was presented supposedly for the purpose of mitigation and to persuade the jury to answer "no" to the special issue on future danger, Dr. Schmitt instead testified that LaGrone showed no remorse and that, if LaGrone were allowed to walk out of the courtroom, Dr. Schmitt would not feel safe. He asserts that the State was thus able to prove future danger merely by cross-examining the defense's own expert. He also argues that, by placing Dr. Schmitt on the witness stand, his defense counsel opened the door to the State to present the hypothetical opinion testimony of Dr. Coons, that LaGrone would constitute a future danger to society even if he spent the rest of his life in prison society. LaGrone argues that, if the defense had not presented Dr. Schmitt's testimony, the State would not have been permitted to present Dr. Coons's testimony in rebuttal.

The district court held that the state habeas court's determination that LaGrone's counsel provided reasonably effective assistance of counsel is not an unreasonable application of Strickland, because LaGrone failed to establish either deficient performance or prejudice. The district court stated that, because Dr. Schmitt's testimony was, on balance, supportive of the defense's goal of a life sentence, defense counsel used sound trial strategy in deciding to call him as a witness. The district court

31

noted that Dr. Coons's opinion on LaGrone's future dangerousness was given in response to a hypothetical question, and was not based upon an examination of LaGrone. The court stated that LaGrone presented no authority to support his contention that, had Dr. Schmitt not testified for the defense at all, the State would have been prevented from calling Dr. Coons to the stand to answer hypothetical questions. Even assuming deficient performance, the district court held that LaGrone failed to establish that there is a reasonable probability that he would have received a life sentence had Dr. Schmitt and Dr. Coons not testified: Given that the jury had already convicted LaGrone of killing three people, and had heard evidence that he had previously been convicted of murder, sexually assaulted two teenaged girls, sold illegal drugs, and shot Dempsey Lloyd twice with a shotgun, there is no reasonable probability that the jury would have determined that LaGrone would not be a future danger to society.

Reasonable jurists would not find debatable the district court's assessment of this claim. LaGrone has not made a substantial showing that counsel rendered deficient performance by presenting Dr. Schmitt's testimony, or that there is a reasonable probability that the outcome of the punishment phase would have been different had counsel not presented the testimony. We therefore deny a COA for this claim.

M

32

<u>Claim 18: Actual Innocence and Selective Prosecution</u>

LaGrone claims that he was denied due process, equal protection, and a fair trial because he is actually and factually innocent of the crime and because he was selectively prosecuted. LaGrone states that all of the identifying witnesses, in their original statements to the police, said that several men came into the house on the morning of the murders. None of the witnesses initially told the police that they saw LaGrone come into the house and commit the murders. At trial, however, the identifying witnesses all changed their stories to testify that only one person entered the house, and that LaGrone was that person. LaGrone maintains that there was significant evidence that the original stories of the witnesses -- that several unidentified men entered the house and committed the murders -- was the truth, as well as evidence that another person admitted on more than one occasion that he committed the murders. He asserts that one reasonable inference from the evidence is that the murders may have been related to Pamela Lloyd's connections to the drug-trafficking community.

LaGrone notes that his present counsel have received information that, since his trial, Pamela Lloyd has been convicted of and sentenced to prison for the murder of her boyfriend; and that Dempsey and Charles Lloyd are both dead, possibly murdered.

33

He does not explain how any of this information is relevant to his actual innocence or selective prosecution claims.

The state habeas court concluded that LaGrone had failed to establish that he was actually innocent of capital murder because he had not presented any newly discovered evidence. It rejected LaGrone's contention that the State created a false impression that only one person entered the house and committed the murders, on the ground that LaGrone was not entitled to relief because the jury in reaching its verdict judged the credibility of witnesses. Finally, the state habeas court concluded that LaGrone had failed to prove that he was selectively prosecuted based on the State's failure to prosecute the men on the porch, because those men were not similarly situated to LaGrone, inasmuch as the evidence showed that LaGrone was either the sole or primary actor.

The district court held that the state court's conclusions are neither unreasonable applications of, nor contrary to, federal law. The district court observed that LaGrone's actual innocence claim was raised in his state habeas application and therefore rejected the State's argument that the claim was not exhausted. The district court held that LaGrone's claim of actual innocence could not be the basis for habeas relief absent an independent federal constitutional violation. See Dowthitt v. Johnson, 230 F.3d 733, 741 (5th Cir. 2000) (a claim of actual innocence is not a ground for federal habeas relief in the absence of an independent

34

constitutional violation, but is merely a gateway through which the petitioner must pass in order to have an otherwise barred claim considered on the merits). The district court rejected LaGrone's contention that the State presented a false impression at trial that LaGrone was the only person who entered the house and shot and killed the victims, because LaGrone failed to prove that the State presented false testimony at trial. The court rejected LaGrone's selective prosecution claim because LaGrone failed to prove that similarly-situated individuals were not prosecuted and thus failed to establish that the prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose. See McCleskey v. Kemp, 481 U.S. 279, 297, 306-07 (1987). The district court noted that the State presented evidence that the same shotgun fired all of the shell cartridges retrieved from the scene; LaGrone's girlfriend testified that, at his request, she bought the shotgun used to commit the murders; and Charles and Dempsey Lloyd, both of whom were familiar with LaGrone, testified that LaGrone came into the house and began shooting people. Based on this evidence, it was the State's theory that only one person killed the three victims, and that LaGrone was that person. Thus, the district court concluded that LaGrone failed to show that the State had a discriminatory purpose in prosecuting him, because the record indicates that the State prosecuted him because the totality of the evidence pointed to him as the perpetrator. The other three men

35

were not similarly situated to LaGrone, as the evidence indicates that one person did the shooting, and there is no evidence that any person other than LaGrone was the shooter.

The district court's assessment of this claim is not debatable among jurists of reason. LaGrone has not made a substantial showing that he is entitled to relief because he is actually innocent, or because he was selectively prosecuted. Accordingly, we a deny a COA for these claims.

N

Claim 19: Denial of Access to State's File and Evidence

LaGrone's final claim is that he was denied due process and equal protection during the state and federal habeas proceedings as a result of the State's refusal to grant his state and federal habeas counsel access to the State's file and evidence. LaGrone states that the Tarrant County District Attorney's office advised his federal habeas counsel that, once the direct appeal is complete, the State's file is closed, and the District Attorney's office does not produce material to the attorneys appointed to represent habeas petitioners. The District Attorney's office advised counsel to make any requests for discovery to the Texas Attorney General's office; but the Attorney General's office does not have possession of the State's prosecution file or evidence. LaGrone argues that, without access to the State's file and evidence, there is no way that state or federal habeas counsel can

36

do a complete job of determining whether he has received adequate representation, whether he was denied exculpatory evidence, or whether there was other error.

The state habeas court concluded that, because the prosecution satisfied its obligations under Brady v. Maryland, and because there is no general constitutional right to discovery or access to the prosecution's files, LaGrone's claim with respect to the state habeas proceedings was without merit. The district court held that the state court's conclusion is not contrary to federal law, because LaGrone's claim is an attack on a proceeding collateral to his detention and not the detention itself. See Rudd v. Johnson, 256 F.3d 317, 319-20 (5th Cir. 2001) (rejecting claim of denial of due process based on lack of access to State's case file during state habeas proceeding).

Regarding the lack of access to the State's file during the federal habeas proceeding, the district court noted that the Supreme Court has never held that the federal Constitution requires that the State maintain an open file policy. See Kyles v. Whitley, 514 U.S. 419, 437 (1995). The court noted further that LaGrone has not alleged, much less shown, that any exculpatory, impeachment, or mitigating evidence was withheld from his counsel. See United States v. Bagley, 473 U.S. 667, 675 (1985) ("The prosecutor is not required to deliver his entire file to defense counsel, but only to

37

disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial.").

The district court's assessment of this claim is not debatable or wrong. LaGrone has not made a substantial showing that he was denied due process or equal protection as a result of counsel's lack of access to the prosecution's files during the state and federal habeas proceedings. We therefore deny a COA for this claim.

IV

With respect to each of his nineteen claims, LaGrone has not made a substantial showing of the denial of a constitutional right. We therefore deny his request for a COA.[2]

COA DENIED.

---

[2]The district court concluded that LaGrone's federal habeas petition was untimely filed, but found that equitable tolling was warranted. Because we have denied LaGrone's request for a COA, it is not necessary for us to consider the State's argument that the claims are time-barred and that equitable tolling is unwarranted.